## EX PARTE GAUDALUPE RIVERA.

No. 10254.   Delivered May 5, 1926.

**Habeas Corpus—Bail Granted.**

The law in this state gives to any person the same right to defend the life or person of another, as his own. In ordinary cases where the issue of self-defense appears reasonably well supported by the record, this court has held same bailable. We are not led to believe that upon a trial herein, a jury giving consideration to the facts, would inflict the death penalty. So believing it becomes our duty to reverse this judgment and grant appellant bail.

Appeal from the District Court of Cameron County. Tried below before the Hon. A. W. Cunningham, Judge.

Appeal from an order upon a habeas corpus hearing denying appellant bail. Bail granted in the sum of $7,500.

*H. B. Galbraith* of Brownsville, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—From an order of the Criminal District Court of Cameron County remanding Guadalupe Rivera, herein called appellant, to the custody of the sheriff without bail upon a pending charge of murder, this appeal was taken.

Without going into the facts at any considerable length, it is made to appear that following trouble between a Mr. and Mrs. Williams, the latter brought suit for divorce against her husband, asking for the custody of their children and obtaining a restraining order forbidding the husband, who is the deceased in this case, from interfering with Mrs. Williams or the children, or coming upon the property or removing the children from the jurisdiction of the Cameron County District Court. Before this injunction was served upon Williams he took the children and carried them to North Texas. After some weeks of search Mrs. Williams found them and recovered their custody and took them back to Brownsville. Deceased seemed to be of the impression that she had carried them to the home of her father and mother in Fannin County and appeared there looking for his wife and children. His threats and manner and speech so alarmed Mrs. Williams' parents that upon his leaving they wired to her at Brownsville to protect herself against him as he might try to get the children at all hazards. Mrs. Williams testified that upon the receipt of this telegram she communicated with the sheriff of the county and asked him to protect her, but could get from him no further assurance than that he would serve the injunction as soon as Williams reached the county. Being afraid of her husband, she conferred with her lawyer who told her to employ some one to guard the persons of herself and children and the premises. In conjunction with her attorneys she employed appellant and his brother. She testified that she acquainted these two men with the facts and told them that her husband was most likely coming through in a car and that he was a dangerous man who had killed another man not very long before, and obtained from appellant the promise that he would protect her and her children at whatever hazards, even being willing to lay down his own life if necessary in order to do so. The testimony shows that the same afternoon Williams came to his home and that some other women and children were visiting Mrs. Williams. The women and children fled into the house and fastened the doors. Williams went to the front door of the residence, and being unable to effect an entrance, went rapidly to the rear door, and finding it fastened he began to tear the wire from

the screen door frame and to kick on the door. The women and children were screaming in the house. For the defense it is shown that appellant approached the deceased while engaged as above stated and asked him what was the matter and notified him that if he did not desist he would make him, or words to that effect. Appellant testified that thereupon deceased made motions which appeared to him to indicate that he was going to attack him, and being conscious of the dangerous character of the deceased and being desirous of protecting the women and children, he shot. Dying statements of deceased offered in evidence by the state indicated that he was doing nothing, but had his hands upraised at the time appellant fired and killed him. There seems no contention that there was any personal enmity, malice or grudge on the part of appellant toward deceased, the men appearing to be strangers.

The law gives to any person the same right to defend the life or person of another as his own. In ordinary cases where the issue of self-defense appears reasonably well supported by the record, this court has held same bailable. The record in this case seems strongly to support the proposition that in what he was doing appellant believed it necessary in order to protect himself as well as Mrs. Williams and her children. We are not led to believe that upon a trial herein a jury giving consideration to the facts would inflict the death penalty. So believing, it becomes our duty to reverse and remand this judgment, and it will be so ordered, and bail of the appellant fixed in the sum of $7,500.                               *Bail granted.*